UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STACEY M. L.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:22-cv-165 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Stacey L., on May 16, 2022. For the following reasons, the

decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Stacey L., filed an application for Supplemental Security Income, alleging a

disability onset date of July 31, 2019. (Tr. 90). The Disability Determination Bureau denied

Stacey L.'s applications initially on March 18, 2020, and again upon reconsideration on July 10,

2020. (Tr. 102, 117). Stacey L. subsequently filed a timely request for a hearing on July 29,

2020. (Tr. 27). A hearing was held via telephone on April 20, 2021, before Administrative Law

Judge (ALJ) Stephanie Katich. (Tr. 48-89). Vocational Expert (VE) Clifford M. Brady testified

at the hearing. (Tr. 77-87). Following the hearing, the ALJ issued an unfavorable decision on

July 22, 2021. (Tr. 11-19). The Appeals Council denied review making the ALJ's decision the

final decision of the Commissioner. (Tr. 13).

At step one of the five-step sequential analysis for determining whether an individual is

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

disabled, the ALJ found that Stacey L. had a continuous 12-month period in which she did not engage in substantial gainful activity. (Tr. 30).

At step two, the ALJ determined that Stacey L. had the severe impairments of, *inter alia*, mild degenerative disc disease of the lumbar spine, degenerative joint disease of the right hip/femoral acetabular impingement, and sinus tachychardia. (Tr. 30). Stacey L. also alleged a disability due to mental impairments such as major depressive disorder, generalized anxiety disorder, and adjustment disorder with anxiety. (Tr. 31). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. (Tr. 31-32). That said, the ALJ found that the Stacey L.'s mental impairments caused no more than a minimal limitation on her ability to engage in basic mental work activities, and therefore considered them non-severe. (Tr. 32).

At step three, the ALJ concluded that Stacey L. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 33). The ALJ found that no medical evidence reflected diagnostic findings that satisfied any listed impairment. (Tr. 33). The ALJ considered whether the severity of Stacey L.'s impairments met or medically equaled the criteria of Listings 1.18, 4.05, 4.11, 4.12, 1.15, 1.16, 7.08, or 11.14, and concluded that they did not. (Tr. 33-34).

After consideration of the entire record, the ALJ then assessed Stacey L.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she

> can occasionally climb ramps and stairs, she can never climb ladders, ropes, scaffolds, she can occasionally balance, stoop, kneel, crouch and crawl, she should avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, unguarded moving machinery, she can occasionally reach overhead with the bilateral extremities and the claimant can frequently handle and finger using the right dominant upper extremity.

(Tr. 34). The ALJ found that Stacey L.'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (Tr. 36). However, she found that the Stacey L.'s statements related to the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 36).

At step four, the ALJ found that Stacey L. was able to perform past relevant work as a hospital clerk, which did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (Tr. 39). Additionally, the ALJ found jobs that existed in significant numbers in the national economy that Stacey L. could perform. (Tr. 39). Consequently, the ALJ found that Stacey L. had not been under a disability, as defined in the Social Security Act, since July 31, 2019, the date the application was filed. (Tr. 40).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to

support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel. Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to individuals who can establish a "disability" under the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920.** The ALJ first considers whether the claimant is presently employed and "doing . . .  substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b).** If she is, the claimant is not disabled, and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the

Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e).** However, if the claimant shows that her impairment is so severe that she cannot engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, considering her age, education, job experience, and functional capacity to work, is able to perform other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** see *Biestek v. Berryhill,* 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Stacey L. has requested that the court remand this matter for additional proceedings. In her appeal, Stacey L. offers two arguments in favor of remand. First, she contends that the ALJ failed to properly assess the persuasiveness of Dr. Erin Miles' findings. Second, she alleges that the ALJ erred by failing to properly analyze her subjective complaints consistent with agency policy related to fibromyalgia.

Stacey L. argues that the ALJ failed to properly assess the persuasiveness of Dr. Erin Miles' findings and test results under **20 C.F.R. § 404.1520c**. Dr. Miles, a neuropsychologist, evaluated Stacey L. on February 25, 2021, and administered several tests including: Validity Measures, Wechsler Adult Intelligence Scale, Wechsler Memory Scale, Conner's Continuous Performance Test, Repeatable Battery for the Assessment of Neuropsychological Status, Trail-

Making Test, and Minnesota Multiphasic Personality Inventory. (R. 1649-1650). According to Stacey L., her test results along with Dr. Miles' report illustrated that she had limitations in concentration, persistence, and pace, with memory issues, lack of completion of tasks, and off-task behaviors. Stacey L. contends that the ALJ erred by not adequately addressing the results of the tests favorable to her and failed to sufficiently explain why she found Dr. Miles' examination unpersuasive.

ALJs have an obligation to develop the record fully and fairly in order to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Otis S. v. Saul*, No. 1:18-cv-372, 2019 WL 7669923, at *2 (N.D. Ind. Dec. 19, 2019) *quoting* **Beardsley v. Colvin**, 758 F.3d 834, 837 (7th Cir. 2014). An ALJ "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." **Reinaas v. Saul**, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotes omitted). The Social Security Administration's previous regulations entitled the opinions of certain physicians to controlling weight based on their status as a claimant's treating physician, however, the new regulations have done away with this requirement. *See* **20 C.F.R. § 404.1520c** ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)…including those from your medical sources"). Instead, ALJs must consider all medical opinions based on factors set out by the Social Security Administration with supportability and consistency being the most important factors for the ALJ to discuss. **Kaehr v. Saul**, No. 3:19-cv-1171, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021).

A medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related

limitations or restrictions in the following abilities:"

  (i)   Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

  (ii)  Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

  (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

  (iv)  Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

**20 C.F.R. § 404.1513(a)(2)**. Dr. Miles' neuropsychological examination summary was not a medical opinion. True, Dr. Miles' report indicated that Stacey L. had difficulties with inattention and distractibility, but it failed to provide any statement regarding her functional limitations. Dr. Miles' report was devoid of any indication regarding what Stacey L. still could do despite her impairments or whether she had restrictions in her abilities to complete the normal mental demands of work. As such, Dr. Miles' finding summary did not constitute a medical opinion.

Even so, the ALJ still addressed Dr. Miles' test results in her opinion, and her decision to grant little weight to Dr. Miles' findings was supported by the evidence in the record. The ALJ noted that Dr. Miles tests revealed that Stacey L. had an average IQ, normal delayed memory with impaired immediate memory, mild trouble concentrating, and the report also demonstrated an inconsistent effort which "might have affected the cognitive measures in testing." (Tr. 31-32). Yet the ALJ also indicated that Stacey L. could handle money, has a hobby of researching genealogy, and denied having problems following instructions. (Tr. 31). The ALJ also noted that Dr. Miles did not have a history of regularly treating Stacey L., and other evidence in the record revealed little mental health treatment from other providers, other than some medication

7

management and therapy. (Tr. 39). Overall, Dr. Miles' findings did not ultimately support her opinion that Stacey L. could not work in any capacity. Thus, the ALJ did not err in finding Dr. Miles' statements unpersuasive.

Next, Stacey L. asserts that the ALJ erred in evaluating her subjective symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. ***Shideler v. Astrue***, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific reasons supported by the record. ***Pepper v. Colvin***, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9.  The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i)     The individual's daily activities;
> (ii)    Location, duration, frequency, and intensity of pain or other symptoms;
> (iii)   Precipitating and aggravating factors;
> (iv)    Type, dosage, effectiveness, and side effects of any medication;

(v)     Treatment, other than medication, for relief of pain or other symptoms;
(vi)    Other measures taken to relieve pain or other symptoms;
(vii)   Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. §404.1529(c)(3).**

The ALJ must justify her assessment with "specific reasons supported by the record." ***Pepper v. Colvin***, 712 F.3d 351, 367 (7th Cir. 2013). Moreover, "the ALJ must explain her subjective symptoms evaluation in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record."  ***Murphy v. Colvin***, 759 F.3d 811, 816 (7th Cir. 2014); *see* SSR 16-30, 2017 WL 5180304, at *10 (Oct. 25, 2017) (The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." ***Ghiselli v. Colvin***, 837 F.3d 771, 777 (7th Cir. 2016); *see also* ***Moore v. Colvin***, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty.  An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain.").

Stacy L. contends that the ALJ utilized an incorrect standard of review when analyzing her subjective complaints of pain in accordance with Agency policy related to fibromyalgia. Stacy L. challenges the ALJ's finding that her subjective complaints of paint were not "entirely consistent" with the objective medical evidence. Instead, Stacy L. argues that the ALJ should have evaluated her subjective complaints to the extent that they could "reasonably be accepted as consistent with the objective medical and other evidence" in accordance with **20 C.F.R.**

9

**§404.1529**. Thus, Stacy L. asserts that the ALJ applied a more stringent standard of review which resulted in an incorrect application of law.

Even though the ALJ used boilerplate language that included the outdated standard of review for how to analyze subjective complaints of pain in portions of her decision, that alone does not warrant a remand. Together with the improper language, it must be evident, or at least unclear, that the ALJ applied the incorrect standard to the facts of the case. *See, e.g.*, **Mendel R. v. Berryhill**, No. 17-cv-5407, 2019 WL 1858510, at *8 (N.D. Ill. April 25, 2019). Essentially, the court should not "nitpick" an ALJ's credibility decision but evaluate the decision implementing a "commonsensical reading" and reverse the ALJ only when the symptom assessment is "patently wrong." **Clemente A. v. Saul**, No. 18-cv-6345, 2019 WL 3973117, at *4 (N.D. Ill. Aug 22, 2019) citing **Jones v. Astrue**, 623 F.3d 1155, 1160 (7th Cir. 2010).

In this case, the ALJ began her analysis outlining the correct standard by explaining that she "has considered all symptoms and the extent to which these symptoms can *reasonably be accepted as consistent with the objective medical evidence* and other evidence…." (Tr. 35) (emphasis added). Later in the decision, the ALJ used the "not entirely consistent" language conflicting with the previously stated standard. (Tr. 36). Nevertheless, the ALJ's decision sufficiently demonstrates that she considered Stacey L.'s subjective reports of pain alongside the objective medical evidence in the record utilizing the appropriate standard. For example, the ALJ noted that Stacey L. reported "feeling fatigued very easily, having limited range of motion, and having problems remembering things." (Tr. 35). The ALJ then considered Stacey L.'s reported pain and mobility issues in detail. (Tr. 35). In fact, when considering Stacey L.'s subjective complaints of pain in light of the record, the ALJ determined that the evidence supported a more restrictive residual functional capacity (RFC) than suggested by previous administrative medical

findings and medical opinions. (Tr. 38). Therefore, it cannot be said that the ALJ failed to properly consider Stacey L.'s subjective complaints pain because the ALJ's decision provides examples illustrating reasoned consideration. *See* ***Burmester v. Berryhill***, 920 F.3d 507, 510 (7th Cir. 2019).

Moreover, the ALJ provided adequate rationale explaining why she concluded that Stacey L.'s subjective reports could not be reasonably accepted as consistent with the medical record.   The ALJ detailed the medical findings concerning Stacey L.'s spine, hip, sinus tachycardia, past surgeries, deep venous thrombosis, fibromyalgia, and so forth, along with her medication and treatment history for those conditions. (Tr. 36-39). Notably, there was minimal evidence in the record to show that Stacey L. pursued recommended physical therapy for her hip, ankle, and shoulder, and there was minimal evidence to support the identification of specific fibromyalgia tender points. (R. 36-38). *See* ***Craft v. Astrue***, 539 F.3d 668, 679 (7th Cir. 2008) (stating that "[i]n assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment.").

Further, the ALJ appropriately considered the medical record when assessing Stacey L.'s reported daily activities and alleged restrictions. (Tr. 36-39). For instance, Stacey L. claimed that she could not stand longer than 15 minutes at a time or walk more than 200 feet. At the same time, the ALJ considered Stacey L.'s ability to work five to six hours a day up to three days a week as a cashier, and the fact that Stacey L. did not require assistance while walking, in part of her analysis of her subjective symptoms. (Tr. 35). It is true that the Seventh Circuit has "cautioned ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment." ***Lanigan v. Berryhill***, 865 F.3d 558, 563 (7th Cir. 2017). Yet, here, the

ALJ considered Stacey L.'s ability to work part-time over a longer time only as evidence that her symptoms were not as severe as she alleged and not as evidence that she could successfully maintain full-time employment.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 10th day of May, 2023.

/s/ Andrew P. Rodovich
United States Magistrate Judge